HYMAN, LICHENSTEIN & CO. ET AL. *v.* MAX STADLER & CO. ET AL.

1. FRAUD. *Collusive suit. Parties to.*

H. and L. were doing a mercantile business under the firm name of "H." M. to collect a firm debt, sued out an attachment against H. individually, and levied on the partnership goods, which were sold, and, after judgment against the defendant, the proceeds of such sale were applied to payment of plaintiff's judgment. L. furnished the information on which it was sued out, testified in favor of the plaintiff, assisted in and desired his success, and assigned to [plaintiff his interest in the proceeds of sale of the goods, after payment of the judgment against defendant. H. defended the suit in good faith. *Held*, that as there was no collusion between H., the defendant of record, and the plaintiff, the conduct of L. could not render the suit a collusive one, such suit being where the parties occupy ostensibly adverse positions, but are, in fact, in accord, and the real though concealed purpose of both is to accomplish the same result.

2. SAME. *Application of partnership assets. Purchaser thereof. Creditors' rights in equity.*

And where in such case the firm property is sold by order of court, and the proceeds thereof applied to the payment of plaintiff's judgment on a firm debt, the other creditors of the firm cannot charge the purchaser of the property at such sale as trustee for their benefit of the assets of the firm of "H.," even though such purchaser be the plaintiff in attachment. For H., the defendant partner, after the sale, has no right to insist upon the application of the proceeds in favor of any particular firm creditors, and L., by his conduct and assignment, waived his right in respect thereto; and the creditors in themselves have no independent right, in the absence of fraud, to charge such property.

3. ATTACHMENT.  *Judicial sale.  Fraudulent vendee.*
   If the plaintiff in an attachment, which is wrongfully sued out, purchases the
      goods at a sale ordered by court, the sale is not fraudulent.  But if it be
      shown that the attachment was sued out by collusion with the defendant, and
      that the sale was in pursuance of a fraudulent scheme by which the assets
      had been acquired, then such purchaser could be dealt with as a fraudulent
      vendee.

4. PARTNERS.  *Judgment against one, no bar against other.  Section* 1134, *Code* 1880.
   Under § 1134, Code of 1880, which makes all liabilities of partners joint and
      several, a judgment against one partner not satisfied is not a bar to an action
      against the other.

APPEAL from the Chancery Court of Lincoln County.

HON. LAUCH McLAURIN, Chancellor.

A statement of the case will be found in the opinion of the court.

*T. R. Stockdale,* for the appellants.

1. Even if there had been collusion in suing out the attachment no harm came of that to appellees. The only thing that came of the attachment was that it resulted in the conversion of the property into money, and the property was in the marshal's hands in that shape instead of in kind.

Suppose that only money had been seized, and appellants had seized it wrongfully and brought it into the marshal's hands and into court, who would have been injured if they had compensated for the delay and expense? They would no longer be the debtor of H. Lewenthall, and if not of the firm of H. Lewenthall certainly not of appellees.

2. The United States court having jurisdiction of the subject-matter of the person and of the property adjudicated the question of indebtedness between these appellants and H. Lewenthall firm, and decided and decreed that appellants should discharge all indebtedness to H. Lewenthall by paying over two thousand dollars, which was done. H. Lewenthall accepted the two thousand dollars and appellants ceased to be debtors of H. Lewenthall, and if they were not debtors of H. Lewenthall certainly the judgments here complained of could not be rendered, for appellants did not owe appellees anything directly.

It cannot be said that this two thousand dollars damages was awarded to Henry Lewenthall individually.

*T. R. Stockdale* also made an oral argument.

*Nugent & McWillie,* on the same side.

Plaintiff cannot pretend that the action of the defendant through his counsel in open court, or rather his non-action in failing to contest a suit to which he had no defense, was a fraud upon them; nor can they say that it was the result of collusion, for they show that the defendant, Henry Lewenthall, was " a victim white as snow," and that the trial was one of great bitterness throughout, in which quarter was not asked or given on either side. If the rendition of that judgment can be considered with reference to the rights of the appellees, which is a most ridiculous proposition on its face, it must be remembered that it was a thing entirely beyond the control of the appellants and resting wholly with Henry Lewenthall, his counsel, and the courts, and one that a conspiracy with Lewis could not in the least degree affect.

The proceeding under review was founded upon the alleged collusion between the appellants and Lewis Lewenthall, and the advantages the former are assumed to have derived from it. Without going into the question of collusion, which is wholly unsubstantiated by the evidence, we may remark that the appellants derived nothing from the attachment, no matter in what spirit it was sued out; but, on the contrary, were defeated on that issue, and lost two thousand dollars of their debt besides. The four thousand three hundred and thirty-eight dollars and sixty cents out of which the balance of the plaintiff's debt, amounting to two thousand nine hundred dollars, was paid, was surely neither brought into court by collusion nor there appropriated by collusion. It got there through a *fair, open, bona fide sale, made by the court on the agreement of the only persons concerned, the plaintiffs in attachment and Henry (not Lewis) Lewenthall, and was there appropriated by the court in consequence of the action of the same parties who were still the only parties concerned, and between whom no collusion is alleged.*

*W. L. Nugent,* for the appellants, argued the case orally.

*R. H. Thompson* and *H. Cassedy*, for the appellees.

1. Should it be regarded that the collusive character of the attachment is a material inquiry in this court, the only question now is whether there be any evidence in the record to support the Chancellor's finding. It is abundantly supported, is supported by the weight of the evidence. It is contradicted not by facts, but alone by the asseverations of defendants in terms of monotonous similarity. Notice the remarkable sameness of language used by defendants in their depositions. *Lee* v. *Guice*, 13 S. & M. 656 ; *Waul* v. *Kirkman*, 13 S. & M. 599 ; *Prewett* v. *Coopwood*, 30 Miss. 369 ; *Drake* v. *Surget*, 36 Miss. 468 ; *Guion* v. *Doherty*, 43 Miss. 538 ; *Apple* v. *Ganong*, 47 Miss. 189 ; *Davis* v. *Richardson*, 45 Miss. 500.

But in my judgment an inquiry as to the collusive character of the attachment does not present a pivotal question. That the attachment was wrongfully sued out is beyond question. That much is certainly settled.

2. But, finally, and as conclusive of this whole matter, and independently of any fraud or collusion, they, though creditors of the firm, " H. Lewenthall," originally elected to proceed against one only of the partners ; they attached only one ; their judgment in the federal court is against only one, Henry Lewenthall. The property of the partnership was seized and sold under the attachment so sued out, and before judgment they became the purchasers. Their previously joint claim against Henry and Lewis was by the judgment they obtained in the United States court against Henry alone merged and became a several liability against him alone ; the previous liability of Lewis by such proceedings was forever extinguished. No law is better settled, and no authority is needed but Mr. Justice Fields' opinion in *Mason* v. *Eldred et al.*, 6 Wallace 231.*

Hyman, Lichenstein & Co., therefore, occupy, so far as this litigation is concerned, the attitude (assumed by themselves with

* Section 1134, Code of 1880, does not change the common-law rule. It permits separate suits against a partner, but it does not provide that the unsued partner shall remain liable. We have no statute that does.

full knowledge of all the facts) of creditors only of Henry Lewenthall, and their rights and responsibilities as to the conversion under the attachment proceeding of the entire assets of the firm must be determined by the rules of law applicable to controversies arising between separate and individual creditors of one of the members of the firm and the creditors of the firm itself. Applying such principles to the facts, in this aspect of the case Hyman, Lichenstein & Co. acquired by their purchase under the attachment proceedings at most only the interest of Henry Lewenthall in the surplus remaining after the payment of the partnership creditors. And more than this will be left in their hands after they pay the decree rendered against them in this cause.

With reference to the copartner, Lewis Lewenthall, whose interest was not disposed of by the attachment proceeding, they occupy the relation of tenants in common, and their right by virtue of their purchase at the marshal's sale gave them an equal but no greater interest in the partnership property purchased than that held by the released Lewis Lewenthall, and this interest was an equal participation in the surplus that but for their purchase would have been due Henry Lewenthall upon payment of all partnership liabilities.

Upon their purchase of the unascertained interest of Henry Lewenthall in the partnership property, good faith to the creditors of the firm required that they should speedily, through the proper tribunal, take steps to wind up the business of the concern that the joint creditors might be secured that *preference* to payment out of the partnership property to which equity entitled them and which in such proceeding would have been awarded them.

Their failure to do this, coupled with their assumption of exclusive ownership of the property and its subsequent conversion into money by them, was such a fraud upon complainants as in equity to impress Hyman, Lichenstein & Co. with the character of trustees *ex malificio* of the fund.

*H. Cassedy* argued the case orally.

*W. R. Spencer*, on the same side.

Suppose that the attachment was not collusive. Suppose that

it was sued out because the firm of H. Lewenthall was insolvent and the debt due the defendants was in danger, can the defendants reverse even *then* the decree of the lower court?

Here we find Hyman & Lichenstein in possession of property bought from a man who they claim was insolvent for the sum of four thousand one hundred dollars, and from which they have by their own showing realized five thousand six hundred dollars. If it is true that the firm of H. Lewenthall was insolvent, then they were the trustees for the creditors, and Hyman, Lichenstein & Co., when they, under these circumstances, acquired possession of the stock and books, occupied the same position that Henry Lewenthall did, viz.: *they* became the trustees. They are responsible to these creditors for the stock in its original shape, and by their conversion they have laid themselves liable, not alone for the price they paid, but also for all profit they have made.

COOPER, C. J., delivered the opinion of the court.

This is a bill filed by the appellees, creditors of the firm of H. Lewenthall, which firm was composed of H. & L. Lewenthall, against the members of that firm and also against the firm of Hyman, Lichenstein & Co. The purpose of the bill is to charge Hyman, Lichenstein & Co., as trustees of certain assets of the firm of H. Lewenthall, for the creditors of that firm.

The allegations of the bill, in effect, are: That in January, 1884, the firm of H. Lewenthall was indebted to Hyman, Lichenstein & Co. in about the sum of four thousand dollars and no more; that Hyman, Lichenstein & Co. and L. Lewenthall, conspiring and confederating to defraud the other creditors of the firm of H. Lewenthall and impoverish Henry Lewenthall, agreed that Hyman, Lichenstein & Co. should sue out an attachment against H. Lewenthall, and under it seize all the property of the firm and by a forced sale for cash obtain the assets of that firm at much less than their real value, and thus make a profit which was to be divided between them; that in pursuance of this scheme an attachment was sued out and levied on the entire assets, worth not less than thirteen thousand dollars; that Henry Lewenthall, against whom alone

the attachment was sued out, in disregard of the rights of the other creditors of the firm, consented to a sale on a short notice of the entire assets, including the books of account; that on the written agreement, signed by Hyman, Lichenstein & Co. and Henry Lewenthall, the defendant in attachment, the judge of the Circuit Court of the United States for the Southern District of Mississippi, in which court the attachment suit was pending, made an order of sale which was executed by the marshal, and that at this sale Hyman, Lichenstein & Co. became the purchasers of all the assets of the firm at and for the price of four thousand one hundred dollars, the same being not more than one-third of their real value; that Henry Lewenthall, who had not assented to the attachment, defended the suit as he ought to have done, and that on a trial of the issue in attachment the same was decided by the jury to have been wrongfully and collusively sued out by the plaintiffs, and damages were awarded against them to the extent of more than six thousand dollars, but that on a motion for a new trial the defendant was required by the judge to remit all damages awarded except two thousand dollars, which was done; that on the trial of the issue of indebtedness judgment was rendered in favor of the plaintiffs for the sum of four thousand nine hundred dollars, by consent of parties, of which sum two thousand dollars was credited on account of the damages awarded for the wrongful suing out of the attachment, and the remainder was paid from the funds in the hands of the marshal arising from the sale of the assets of the firm. The bill avers that no other creditor of the firm of H. Lewenthall, except Hyman, Lichenstein & Co., had knowledge of the fact that L. Lewenthall was a member of the firm; that Hyman, Lichenstein & Co. knew that fact because the partnership articles were in their keeping, but that they failed to make L. Lewenthall a defendant in their attachment suit in order that he might be protected against the other creditors of the firm. The bill further charges that Hyman, Lichenstein & Co. realized much more from the sale of the property purchased than their debt.

Complainants submit to the court that by proceeding against Henry Lewenthall alone, Hyman, Lichenstein & Co. merged their

debt against the firm in the judgment against him, and having done so the purchase of the goods of the firm is to be taken as a purchase under an attachment against Henry for his individual debt, and that under such sale and purchase Hyman, Lichenstein & Co. acquired only so much as remained after payment of all partnership debts.

Hyman, Lichenstein & Co., answering the bill, admitted the proceedings in the federal court as stated, and that the sale and purchase of the goods was made. They deny all fraudulent combination, or that their attachment was sued out by collusion with L. Lewenthall ; they aver that their sole object in suing out the attachment was to collect their debt.; that the purchase of the goods was made in good faith and solely for the purpose of getting the money due them, and that at the sale a fair price was paid and the money realized was applied by the order of the court. They admit that by the verdict of the jury it was determined that their attachment was wrongfully sued out, but deny that it was decided that there was a fraudulent collusion between them and L. Lewenthall, and insist that by their purchase they became owners of all the assets of the firm without liability to be called to account by other creditors of the firm of H. Lewenthall.

From this statement of the material allegations of the bill and answer it appears that the complainants base their right to recover on two propositions ; first, that there was a fraudulent scheme between L. Lewenthall and Hyman, Lichenstein & Co., or, secondly, that by purchasing at the sale made under the attachment proceedings the defendants acquired only the interest of H. Lewenthall in the firm property, and by reason of the fact that they have disposed of the same are liable to the creditors of the firm to the extent of the sum realized out of the firm assets.

A careful examination of the very voluminous record fails to disclose any evidence to support the allegation of a fraudulent combination between Hyman, Lichenstein & Co. and L. Lewenthall. It does appear that L. Lewenthall desired to secure the payment of the sum due to them in preference to debts due to others, and had agreed at the commencement of the business between his

firm and theirs to see that the debt due them should be paid, and that in accordance with this undertaking he notified them of the condition of his firm and of his inability to control his partner and pay or secure their claim. It is also manifest that he expected Hyman, Lichenstein & Co. to resort to some summary remedy for the collection of their debt, and that he endeavored as a witness, and probably as an adviser, to support the attachment which they sued out against Henry. But their debt was an honest one, and he had the right to prefer them, and being unable to do so by the consent of his partner, he might with equal right lend them his aid in any lawful effort to secure priority over other creditors. The remedy by attachment to which the creditors resorted was neither an unlawful nor a secret one. Henry Lewenthall was by the proceeding placed in an adversary position to them, and the question for decision was whether he had done those things which the law recognized as cause for attachment. If he had, the plaintiffs in attachment were entitled to recover, whether Lewis Lewenthall wished them to recover or not; if he had not, then the fact that he desired them to succeed, or that he furnished the information on which the writ was sued out, or that he testified in their favor, could not have supported the action. A collusive suit is one in which the parties who occupy ostensibly adverse positions are, in fact, in accord, and whose real though concealed purpose is to accomplish the same result.

That Henry Lewenthall, the defendant in the writ, did not act in collusion with the attaching creditors is evident; he successfully defended the issue, and claimed and recovered heavy damages against them. Nor was there any fraud in the sale of the assets of the firm under the order of the court. The goods seized under the writ were many of them of a perishable nature, and it was within the discretion and power of the court to direct their sale to prevent loss; the sale was public, made by the order of the court having jurisdiction, and in conformity with the agreement of the parties and the directions of the court. If the purchase was in good faith the purchasers held as their own whatever interest in the property could pass by a sale made under such circumstances,

and their right to retain it was not affected by the final result of the litigation between themselves and the defendant. After the sale the proceeds represented the property attached and sold, and these proceeds were, in fact, applied by the court in its final judgment either to the defendant in the suit or to the debt on which final judgment had been rendered. The fallacy in the argument of counsel for the appellees is that it deals with the purchasers as fraudulent purchasers, because as plaintiffs they sued out a writ of attachment to which they were not entitled. If the attachment had been sued out by collusion with the defendant and the sale had been but a part of the fraudulent scheme by which the assets were to be acquired, the fraud of the suit would have attached to the sale made in it and the purchasers could be dealt with as fraudulent vendees. But the record contains no suggestion of the existence of any collusion or agreement between the plaintiffs and defendant in attachment; on the contrary, it unquestionably shows that the parties are now and continuously have been adverse and bitterly hostile.

The remaining question is whether at the sale the purchasers acquired only the interest of Henry Lewenthall in the partnership assets, becoming tenants in common therein with Lewis Lewenthall and holding the partnership effects subject to the prior right of partnership creditors. The rule is well settled, that under an execution sale against one partner for his individual debt a purchaser acquires only such rights as the defendant has, becomes tenant in common with the other partners, and takes in distribution only what remains after a settlement of the partnership accounts. Formerly, before the equities of the partners were well established, a purchaser of a partner's interest took as tenant in common with the other partners a relative portion of the partnership property regardless of the debts of the firm, but the equity of the other partners to have the firm property applied first to the payment of firm debts was soon recognized by courts of equity and has always since been steadily preserved and enforced. We cannot concur in the view urged by counsel for appellees that a firm creditor who proceeds to judgment against one member of the debtor firm

thereby waives his right to sue in another action the other members, or that the liability of the party not sued is merged in the judgment against the other.   The effect of § 1134 of the Code of 1880 is to make all liabilities of partners joint and several, and such being the case a judgment against one not satisfied is not a bar to an action against the other.

It is not true, therefore, that the partnership property was, by the proceedings in the federal court, applied to the payment of the individual debt of H. Lewenthall.   It was applied to the satisfaction of a firm debt, for the payment of which the partner not sued remained as before bound, notwithstanding the judgment which had been rendered against his partner.   It is well settled in this State that the right of partnership creditors to priority of payment out of partnership assets is not an original, independent right existing in the creditor, but is derivative and springs from the equity of the partners.   *Freeman* v. *Stewart,* 41 Miss. 138; *Schmidlapp* v. *Currie,* 55 Miss. 597.

After the sale under the order of the court, H. Lewenthall had no right to insist upon an application of the partnership property to the debts due the appellees, for his entire interest in the partnership property passed by the sale ; nor could Lewis Lewenthall insist upon such application, for the reason that he had by his conduct and approval consented to its application to the payment of the debt due to Hyman, Lichenstein & Co., which was a debt due by his firm.   He assigned to them his supposed interest in the excess of the proceeds of the sale after payment of their judgment against H. Lewenthall, and though this assignment was not recognized by the court, it was, in connection with his other acts, a waiver of any supposed equity which he had to divert the property from them to other creditors.   As there is no equity in either of the partners to fix upon the property which passed into the hands of Hyman, Lichenstein & Co. a liability to other firm debts, there cannot be, in the absence of fraud, an independent right in the creditors themselves to such priority.   As we have said, we see nothing in the transaction except an endeavor on the part of Hyman, Lichenstein & Co. to secure priority over other creditors.

These creditors are now attempting to attain the same priority for themselves. The equity of the defendants is as great as that of the complainants, and under such circumstances they ought not to be disturbed.

*The decree is reversed and bill dismissed.*